## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| PATRICK WISE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-cv-01229-TMP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.      Introduction

The plaintiff, Patrick William Wise, appeals from the decision of the

Commissioner of the Social Security Administration ("Commissioner")[1] denying

his application for a period of disability and Disability Insurance Benefits ("DIB").

Mr. Wise timely pursued and exhausted his administrative remedies and the

decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3).  The parties have consented to the exercise of dispositive jurisdiction

---

[1] It appears, from the briefs filed by the Government in other Social Security cases and from news reports, that there is neither a Commissioner nor an Acting Commissioner currently serving in the Administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 24).  Accordingly, the court issues the following memorandum opinion.

The plaintiff was 47 years old on the date of the ALJ's opinion.  (Tr. at 35). His past work experience includes employment as a master carpenter.  (Tr. at 34). The plaintiff claims that he became disabled on August 21, 2013, due to severe low back pain, severe neck pain, carpal tunnel syndrome, depression, panic disorder with agoraphobia, post-traumatic stress disorder, and attention deficit disorder with hyperactivity.  (Doc. 15, p.2).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he is, the claimant is not disabled and the evaluation stops.  Id.  If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  Id.  The decision depends on the medical evidence in the record.  See Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. Id. If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. Id. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. Id. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. Id. The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform;

once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 21, 2013. (Tr. at 20). According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: "cervical disc disease, obesity, s/p carpal tunnel surgery, and lumbar back pain." <u>Id.</u> He also determined that the plaintiff's "major depression-recurrent and anxiety disorder" are non-severe. <u>Id.</u> at 27. The ALJ found that the plaintiff's severe and non-severe impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>Id.</u> at 29. The ALJ found the plaintiff to have mild restriction in activities of daily life, mild difficulties in social functioning, and mild difficulties with regard to concentration. (Tr. at 28). The ALJ determined that the plaintiff has the residual functional capacity to perform work at a sedentary level of exertion as defined in 20 CFR 416.967(a). <u>Id.</u> The ALJ further elaborated:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), which allows for occasional stooping and crouching; no upper extremities pushing or pulling; no driving; and a temperature controlled environment.

(Tr. at 24)

According to the ALJ, the plaintiff is unable to perform any of his past relevant work and has "a high school education, a 2-year electronics degree, and is able to communicate in English" as those terms are defined by the regulations. (Tr. at 33). He determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Id. Even though the plaintiff is limited to sedentary work, the ALJ determined that there are a significant number of jobs in the national economy that he is capable of performing, such as assembler, table worker, and surveillance monitor. (Tr. at 36). The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 21, 2013, the amended onset date of disability." Id.

## II.     Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. See Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the

Commissioner with deference, but applies close scrutiny to the legal conclusions. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. Id. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. Miles, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. See Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead,

opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

Mr. Wise argues that the ALJ's decision was erroneous and should be remanded for three reasons. (Doc. 15, p.1). First, he claims that the ALJ failed to afford the proper weight to the opinions of his treating physician, Dr. Tariq, and his treating psychologist, Dr. Lachman, and failed to show good case for doing so. Id. Second, Wise argues that the ALJ failed to state his reasons for affording less weight to the opinions of Dr. June Nichols and Dr. David Wilson with "at least some measure of clarity." Id. Third, Plaintiff argues that the ALJ did not consider all of his severe mental impairments. Id.

## A. Treating Medical Providers

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing Lewis, 125 F.3d at 1440); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the

application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." <u>Lewis</u>, 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity.  <u>See, e.g.</u>, 20 C.F.R. § 404.1546(c).

### 1.  Dr. Tariq

Mr. Wise argues that that the ALJ's decision to afford only "partial weight" to Dr. Tariq's opinion was erroneous because the ALJ misstated the opinion. (Doc. 15, p. 32).  The Commissioner argues that the ALJ's opinion was in accord with the sparse record that did not support Dr. Tariq's assertion that the plaintiff was unable to work.  (Doc. 21, p. 5).  The ALJ afforded "partial weight" to Dr. Tariq's opinion. Specifically the ALJ stated:

> Partial weight is given to the opinions of Dr. Tariq, who completed a Request for Medical Information on August 27, 2013. In the document, Dr. Tariq opined that the claimant was mentally and physically unable to work due to back pain, anxiety, and cervicalgia. However, Dr. Tariq opined that the claimant's conditions were not

permanent and that it was expected that the claimant was able to seek employment or return to work in 6 months. While I agree that the claimant's conditions were not totally disabling as indicated by the physician, I find that the opinion in which the physician indicated that the claimant was unable to work due to back pain, anxiety, and cervicalagia [sic] is not supported by objective findings (Exhibit 7F).

(Tr. at 33-4).

On August 27, 2013, in a request for information by the Food Stamp Program, Dr. Tariq opined that the plaintiff was unable to work because of his back pain, anxiety, and cervicalgia. (Tr. at 208). Dr. Tariq was uncertain when the conditions began but opined that the plaintiff's inability to work was not permanent, and he would be able to return to work in a minimum of six months. Id.

As an initial matter, despite plaintiff's contention to the contrary, Dr. Tariq's August 27, 2013, opinion is not entitled to the usual deference given to a treating physician. Pursuant to 20 CFR § 404.1527, a treating source is defined as an "acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 CFR § 404.1527(a)(2). This requires that the claimant must have seen the provider with a frequency that is consistent with the requirements of his conditions. Id. This requires neither that visits are very frequent, nor does it preclude a source that the claimant only sees

twice a year if that is the common treatment schedule for the claimant's condition. Id. However, a source that the claimant sees only once to obtain a report in support of disability is not a treating source. Id.

At the time that Dr. Tariq gave his August 27, 2013, opinion, he had treated the claimant on only one occasion—the day before, on August 26, 2013. (Tr. at 20, 207-8). After one visit, Dr. Tariq did not possess any special knowledge of the patient's condition due to the longevity of his treatment that now entitles his opinion to special consideration. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 CFR § 404.1527(d)(2). Additionally, as the ALJ noted, there are no objective findings, such as treatment records or physical examination results, supporting Dr. Tariq's opinion. (Tr. at 34). The medical evidence of record on the date of Dr. Tariq's opinion includes surgical results from plaintiff's cervical fusion at Gadsden Regional Medical Center and a record from Dr. Tariq on August 26, 2016, where he, seemingly without medical testing or objective evidence, diagnosed the patient with cervicalgia, lumbago, and generalized anxiety disorder. (Tr. at 170-180, 207). Even with those diagnoses, his recommended treatments at that time were neck and back exercises and continuation of the medication prescribed for anxiety. (Tr. at 207). Therefore, the court finds that Dr. Tariq had not established "treating physician" relationship at the time of his August 27, 2013, report.

But even if it is assumed that Dr. Tariq was a "treating physician, the ALJ's decision to afford "partial weight" was supported by substantial evidence because the opinion was not supported by objective medical evidence. A treating physician's opinion can be discounted if is not supported "by objective medical evidence or is wholly conclusory." See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting Edwards v. Sullivan, 937 F.2d 580, 583–84 (11th Cir. 1991)). Dr. Tariq's conclusory opinion that the claimant is unable to perform any work is contradicted by the conservative treatment the claimant had received to that point, as well as the consultative examination by Dr. Schafer performed only a month later, in September 2013.

### 2. Dr. Lachman

Mr. Wise also argues that the ALJ failed to afford proper weight to the opinion of his treating psychiatrist, Dr. Lachman. (Doc. 15, p.1). The Commissioner, on the other hand, argues that there are inconsistencies in Dr. Lachman's opinions that provide substantial evidence for the ALJ to discredit her opinion. (Doc. 21, pp. 5-7). The ALJ afforded "minimal weight" to the Mental Health Source Statements completed by Dr. Lachman on December 1, 2014, and August 24, 2015, because they were inconsistent with objective medical findings. (Tr. at 34).

In the December 1, 2014, opinion Dr. Lachman opined that the plaintiff was able to (1) "understand, remember, or carry out very short and simple instructions," (2) "maintain attention, concentration, and pace" for at least a two hour period, and (3) "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." (Tr. at 237). However, she opined that the plaintiff could not: (1) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," (2) keep an orderly routine while unsupervised, or (3) accept and respond appropriately to instruction and criticism. Id. She opined that Mr. Wise was "not able to work at all," and that these limitations dated to October 1, 2012. Id.

Nine months later, on August 24, 2015, Dr. Lachman completed another Mental Health Source Statement where she opined that Mr. Wise could "understand, remember, or carry out very short and simple instructions" and "maintain attention, concentration, and pace" for at least a two hour period. (Tr. at 371). She opined the plaintiff could not: (1) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," (2) keep an orderly routine while unsupervised, (3) accept and respond appropriately to instruction and criticism, or (4) "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." Id. She

opined that the plaintiff was "not employable" and that the limitations existed back to October 1, 2012.  Id.

The court finds that there is substantial evidence in the record to support the ALJ's finding that the medical opinions were not supported by objective medical findings.  As an initial matter, Dr. Lachman's findings that the plaintiff's limitations existed in October of 2012 are not supported by any medical evidence. Dr. Lachman's first appointment with the plaintiff was on April 7, 2014, and the first medical evidence of any psychiatric treatment is on February 18, 2014.  See (Tr. at 210-6).   There are medical records for her to review concerning the claimant's mental-health status prior to February 2014.  Therefore, Dr. Lachman had no way of knowing what limitations the plaintiff had in 2012, and any opinion about plaintiff's psychiatric condition at that time was not based on objective medical evidence.  Additionally, on December 1, 2014, Dr. Lachman opined that the plaintiff had very severe limitations and was "not able to work at all."  (Tr. at 237).  However, just fourteen days later, Dr. Lachman had an appointment with the Mr. Wise where she noted that he was frustrated because he was unable to get in to pain management but was "otherwise stable on psych regimen."  (Tr. at 312).

On April 27, 2015, Dr. Lachman again saw Mr. Wise.  (Tr. at 320). However, the notes from this visit are duplicates of the December 15 visit with the exception of a new notation that the plaintiff was "bothered by minimal stressors to

the point where he is not functioning well." Id. He was noted to be very anxious but also cooperative and polite. Id. On July 27, 2015, however, the plaintiff had an appointment with a LCSW, Chad Knight, where he reported reduced anxiety and anger and that his anxiety was well managed. (Tr. at 333-4). He achieved some of his counseling goals and was noted to be oriented to person, place, time, and situation with no disturbances and of good mood and full affect. Id. Yet, less than one month later, on her Mental Health Source Statement dated August 24, 2015, Dr. Lachman ascribed even more severe limitations than in her December 1, 2014, opinion. (Tr. at 371). This is wholly inconsistent with the latest psychiatric encounter with the plaintiff at Quality of Life with Chad Knight where he was noted to be improving. Compare (tr. at 371) with (tr. at 333-4). Because of the inconsistencies with the objective medical evidence, the court finds that there is substantial evidence in the record to support the ALJ's decision to afford "minimal weight" to Dr. Lachman's opinions.

### B. Non-Treating Physicians

As addressed previously, the ALJ must consider several factors in determining the weight to be given to a medical opinion. 20 C.F.R. § 404.1527(c). Different types of medical sources are entitled to differing weights. The opinion of a treating physician, who has an ongoing relationship with the patient, is entitled to the greatest weight. 20 C.F.R. § 404.1502. A non-treating physician or

psychologist, who has examined the patient but does not treat the patient, is entitled to less weight.  Id.  The least weight is given to a non-examining medical source, who may provide an opinion based on a review of the patient's record but who has not examined the patient.  Id.  Even so, any medical source's opinion can be rejected where the evidence supports a contrary conclusion.  See, e.g., McCloud v. Barnhart, 166 F. App'x 410, 418-19 (11th Cir. 2008).

      1.  Dr. June Nichols

Mr. Wise argues that the ALJ erroneously substituted his opinion for that of the medical examiners when he gave only "partial weight" to the opinion of the consultative examiner, June Nichols.  (Doc. 15, p. 39).  The Commissioner argues that there was substantial evidence to support the finding because Dr. Nichols' opinion is not supported by the objective findings.  (Doc. 21, p. 8).  Dr. Nichols gave the following opinion on October 12, 2013.

> …Mr. Wise suffers with chronic pain and has had increasing symptoms of depression; with greater difficulty controlling impulses. His ability to relate interpersonally and withstand the pressures of everyday work is compromised due to the nature of his current symptomatology.  He does not have deficits, which would interfere with his ability to remember, understand and carry out work related instructions. He is able to handle his own funds and to live independently.  Prognosis for significant improvement over the next 12 months is guarded.

(Tr. at 196).

The ALJ gave only "partial weight" to Dr. Nichols' opinion because he found that the opinion that Mr. Wise's ability to relate interpersonally and withstand the pressures of everyday work was compromised was not supported by the objective findings of the examination. (Tr. at 33). On the day of the exam, Dr. Nichols noted that Mr. Wise was "neat and clean," that he spoke clearly and with a normal rate, that his mood was "mildly dysphoric" and congruent with his thought processes, and that his affect was appropriate and normal. (Tr. at 194). Mr. Wise reported that he had insomnia, decreased appetite, decreased energy, and anhedonia. Id. He denied having homicidal or suicidal ideations and crying spells. Id. Mr. Wise had a clear stream of consciousness, he was "oriented to person, place, time, and situation," his mental processing was of an adequate speed, his memory was intact, he had an adequate general fund of knowledge, he could think abstractly, he had normal thought processes, he was unremarkable for hallucinations and delusions, he denied having obsessive or compulsive thoughts, he had good judgment and insight, and he was of average intellectual ability. (Tr. at 195). He reported that he did not like crowds of people and that he had panic attacks. Id.

The court finds that there is substantial evidence in the record to support the ALJ's finding. In addition to all of the above findings that indicate a much higher level of functioning than was opined, Dr. Nichols reported that Mr. Wise was well

motivated and cooperative during the exam. (Tr. at 195). She also reported that Mr. Wise lived with his wife and children. (Tr. at 195). This provides substantial evidence to discredit Dr. Nichols' opinion that Mr. Wise is lacking in interpersonal abilities and unable to withstand everyday work. Additionally, to the extent that the plaintiff argues that the ALJ did not state his reasons with "at least some measure of clarity," this argument is without merit. The ALJ explicitly stated that he was giving only "partial weight" to the opinion because it was not supported by the objective findings. See (Tr. at 33).

### 2. Dr. David Wilson

Plaintiff argues that the ALJ failed to state with at least some measure of clarity the reasons that he discredited the opinion of Dr. Wilson and afforded it only "minimal weight." (Doc. 15, p. 39). Conversely the Commissioner argues that there is substantial evidence in the record to support the ALJ's decision. (Doc. 21, p. 8). The ALJ afforded "minimal weight" to the Mental Health Source Statement by Dr. David Wilson because the opinion was inconsistent with the objective evidence gained through his evaluation of the plaintiff. Specifically the ALJ stated

> Minimal weight is given to the mental health source statement completed by Dr. Wilson on September 2, 2015, in that his opinions are inconsistent with his objective findings upon examination during the psychological evaluation. I specifically note that Dr. Wilson opines that the claimant would experience sedation and possibly

memory impairment as side effects to his medications. However, the claimant admitted that he experienced no side effects resulting from his prescription medications.

(Tr. at 34).

On September 2, 2015, Dr. Wilson opined that the plaintiff was unable to (1) "understand, remember, or carry out" instructions, (2) maintain attention, concentration or pace for a two hour period, (3) work within a schedule and be punctual within tolerance, (4) keep up a routine without supervision, (5) adjust to changes in the work place, (5) appropriately respond to criticism from supervisors, (5) interact with co-workers, (6) maintain socially acceptable behavior and adhere to standards of neatness and cleanliness.  (Tr. at 379).  He also opined that the plaintiff would miss 30 out of 30 days of work in a time period.  Id.  Furthermore, he stated that the plaintiff would experience sedation and possibly memory impairment as a side effect of his medication.  Id.

However, Dr. Wilson's evaluation of the plaintiff indicates a much lower degree of mental impairment than is depicted in his opinion.  The plaintiff drove himself to the interview and appeared neat and clean.  (Tr. at 376).  The records do not note that he was late, so, presumably, he arrived on time.  Id.  His thought processes were intact, his speech was clear and normal to rapid in rate, and he was cooperative and respectful.  Id.  He reported that he had no phobias, obsessions, compulsions, or crying spells.  Id.  He reported that he sometimes had panic attacks

and occasionally had suicidal ideations.  Id.  On the normal day, he assisted in the care of his disabled wife, cleaned the house, and cared for his dog.  Id.  He recently had gone on a Sunday outing to the park with his daughter and grandson.  Id.  He also reported that he occasionally attended church.  Id.  Additionally, the plaintiff reported no sedation or memory impairment with his current medication regime despite reporting side effects of prior medications.  See id.

The court finds that there is substantial evidence to support the ALJ's finding that the severe limitations that Dr. Wilson opined existed are not supported by the objective findings of the psychological evaluation, and in some instances are directly contradicted by the medical findings.  Furthermore, to the extent that the plaintiff again seeks to argue that the ALJ failed to state the reasons for disregarding the opinion "with some measure of clarity," this is again without merit.  See (Doc. 15, p.39).  The ALJ clearly and explicitly stated that he was affording only "minimal weight" to the opinion and the reasons for doing so.  (Tr. at 34).

## C. Severe Impairments

Mr. Wise also argues that the ALJ failed to consider all of his severe impairments.  (Doc. 15, p. 45).  He claims that the ALJ should have considered his mental impairments as "severe," that the ALJ failed to follow the "slight abnormality" standard, and that the ALJ violated SSR 96-8p.  Id.  Conversely, the

Commissioner argues that the ALJ's finding was proper because the plaintiff failed to meet the burden of proving he had a severe impairment. (Doc. 21, pp. 12-3). To reiterate, the ALJ found that the plaintiff had severe impairments of "cervical disk disease, obesity, s/p bilateral carpal tunnel surgery, and lumbar back pain." (Tr. at 20). The ALJ also found that "the [plaintiff's] medically determinable impairments of major depression-recurrent and anxiety disorder considered singly and in combination [did] not cause more than minimal limitation in the [plaintiff's] ability to perform basic mental work activities and [was] therefore nonsevere." (Tr. at 27).

To the extent that Plaintiff relies on McDaniel v. Bowen for the proposition that "only claims based on the most trivial impairments [should be] rejected," this is without merit in the context of this case. See (Doc. 15, p. 45) (citing McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986). In McDaniel v. Bowen, the court reiterated the Brady standard for the determination of severe impairment. 800 F.2d at 1031 (citing Brady v. Heckler, 724 F.2d 914 (11th Cir.1984)). That standard provides an "impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." McDaniel, 800 F.2d at 1031 (citing Brady, 724 F.2d 914). However, both McDaniel and Brady were cases where the plaintiff was

found not to have any severe impairment at all. See McDaniel, 800 F.2d 1026, Brady, 724 F. 2d 914. Thus, in both cases, the five-step sequential process was ended at Step Two. See McDaniel, 800 F.2d 1026, Brady 724 F. 2d 914.

In the plaintiff's case, however, the analysis did not end at Step Two. (Tr. at 13-16). Rather, because the plaintiff was found to be suffering from at least one severe impairment, the ALJ continued to Step Three. (Tr. at 16). The number or nature of severe impairments found at Step Two is unimportant if the sequential analysis continues because, in assessing the claimant's RFC at Step Four, *all* of the claimant's impairments must be considered, whether "severe" or not. The designation of an impairment as "severe" at Step Two only has the effect of pushing the sequential analysis to the next step, which occurred here.

Plaintiff also alleges that the ALJ did not follow the "slight abnormality standard" when he determined that Plaintiff's mental impairments were non-severe. (Doc. 15, p. 45). In the Eleventh Circuit, the Brady standard is the determinative test for whether an impairment is severe. See Brady, 724 F. 2d 914. Here, the ALJ determined that the plaintiff's medically determinable mental impairments, major depression and anxiety, were only minimally limiting of the claimant's ability to perform work activities. (Tr. at 27). The ALJ reviewed the medical evidence of record, weighed medical opinions, and explained the rationale behind his findings. Additionally, the court has reviewed the medical records, with

special attention to those cited by the plaintiff (doc. 15, p. 46), and found that the plaintiff's only recurrent psychiatric complaints were depression and anxiety.  See, e.g., (Tr. at 193-6, 204-16, 212-33, 236-45, 274-88).  However, the existence of an impairment does not prove that the impairment is severe or impacts a claimant's ability to work.  Hutchinson v. Astrue, 408 F. App'x 324, 326 (11th Cir. 2011).  There is substantial evidence to support the ALJ's findings that plaintiff's major depression and anxiety are non-severe.  Accordingly, to the extent that Plaintiff seeks remand on that ground, such request is declined.

Plaintiff additionally seeks remand on the ground that the ALJ violated SSR 96-8p by not considering both his severe and non-severe impairments when assessing his RFC.  (Doc. 15, p. 45).  The plaintiff argues that the ALJ did not consider his "panic disorder with agoraphobia, posttraumatic stress disorder, and attention deficit disorder with hyperactivity."  (Doc. 45, p. 45).  As plaintiff points out, SSR 96-8p requires:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

1996 WL 374184 at *5 (July 2, 1996).

However, in considering step four of the sequential evaluation process, the ALJ noted explicitly that determining the plaintiff's RFC required him to consider all of the severe and non-severe impairments cumulatively. (Tr. at 19). The ALJ determined that the plaintiff had the RFC to perform sedentary work after consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. at 30). Therefore, the ALJ's decision is consistent with the mandate of SSR 96-8p.

## IV.     Conclusion

Upon review of the administrative record, and considering all of Mr. Wise's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. The determination will be AFFIRMED, and this action will be DISMISSED WITH PREJUDICE. A separate order will be entered.

DONE this 5th day of December, 2018.


T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE